1  LAW OFFICES OF M. R. BELTER
   Michael Belter Esq. 97417
2  16 North Marengo, Suite 619
   Pasadena California  91101
3  (626) 796-2599
   (626) 796-1458 Fax
4  michaelbelter@yahoo.com

5  Attorney for Defendant

6

7              UNITED STATES DISTRICT COURT

8         FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10  UNITED STATES OF AMERICA,        )   No. 06 CR 00044-DDP
                                     )
11              Plaintiff,           )   DEFENDANT MARK ALAN
                                     )   ABRAMS' SUPPLEMENTAL
12  vs.                              )   SENTENCING MEMORANDA
                                     )
13  MARK ALAN ABRAMS,                )
                                     )   August 23, 2010
14              Defendant.           )
                                     )
15  _____      )

16

17       NOTICE IS HEREBY GIVEN that on August 23, 2010 at 1:30 p.m., or as soon

18  thereafter as the matter may be heard, before Honorable Dean D. Pregerson,  of the

19  above entitled court, defendant, Mark Alan Abrams, requests the Court consider his

20  position re: sentencing and impose a sentence not greater than fifty seven months. Said

21  request is based on the previously filed defense sentencing memoranda, the attached

22  supportive statements and reports, the United States Attorney's 5K1.1 recommendation,

23  including the detailed description of Abrams' cooperation, including the transcripts of

24  Abrams testimony before this Court.

25       As noted in the government's sentencing memorandum, after being charged, Mr.

26  Abrams provided substantial cooperation to the United States Attorney in the prosecution

27  of the co-defendants and eventually testified at the trial of Joseph Babajian, Kyle Grasso

28  and  Lila Rizek before this District Court. There were additional co-defendants

prosecuted and convicted through guilty pleas, including Nicole LaViolette, Jamieson Matykowski, Timothy Holland, Richard Maize, Scott Robinson, Bill Thomas and Charles Fitzgerald. Abrams cooperated for well over six years in the prosecution of himself and the other participants in the fraud. As noted, his cooperation included many extensive debriefing sessions, authentication and explanation of key documents and testimony during the trial of two real estate agents and an appraiser. The United States Attorney has characterized Abrams testimony was instrumental in securing two convictions and two additional guilty pleas.

The United States Attorney has recommended a seven level departure pursuant to U.S.S.G. 5K1.  This recommended departure results in a total advisory guideline offense level of 28, with a corresponding sentencing range of 78-97 months. The government recommends an 84 month sentence.

Given Abrams substantial cooperation, including his trial testimony, and his related cooperation in a state investigation and prosecution for fund raising corruption, the defendant respectfully requests a ten level downward adjustment for a adjusted offense level of 25 and a corresponding sentencing range of 57-71 months. Abrams seeks a sentence not to exceed 57 months. In reaching an adjusted offense level of 25 Abrams seeks downward departures based his cooperation, in the instant case and a state investigation targeting political fund raising corruption. U.S.S.G 5K1.1.

The nature and circumstances of Abrams' offense conduct and his history and characteristics justify a 57 month sentence. 18 U.S.C. 3553 (a)(1). Clearly Abrams' offense conduct is egregious. He was an experienced developer and mortgage broker, who took advantage of his knowledge and experience to effectuate the fraud. Since his arrest, Abrams has fully cooperated with the government and his vast experience and knowledge resulted in the convictions and or guilty pleas of his co-defendants. Moreover, as seen by the numerous statements of those who know and continue to work with Abrams, he has been forthright and open regards his offense conduct. The resultant personal shame and depression in effect being an additional form of punishment endured over the past seven years.

A 57 month sentence surely reflects the seriousness of Abrams' crimes, promotes respect for the law, and provides just punishment for the offenses. 18 U.S.C. 3553 (a)(2)(A). A sentence of nearly five years incarceration represents a severe and stark contrast for a man who has tasted the fruits of the highest levels of our society. Institutional confinement of any length would be punishment for Abrams. A sentence of nearly five years reflects the seriousness of his offense conduct *and* recognizes his cooperation and assistance. Further, a 57 month sentence would afford adequate deterrence to criminal conduct. 18 U.S.C. 3553 (a)(2)(B-C). It would seriously impact Abrams and deter him from any future offense conduct and provide the public notice, that even a fully cooperative offender will suffer substantial confinement.

Finally, a 57 month sentence avoids any unwarranted sentence disparities. 18 U.S.C. 3553 (a)(6). The government notes that Fitzgerald, who was sentenced to 168 months and Abrams should be viewed similarly.  Regarding offense conduct, this position appears reasonable. However, it is noted that unlike Fitzgerald, Abrams did not flee  and in the end, provided substantial and meaningful cooperation.

SUPPORTIVE STATEMENTS

Abrams submits under separate cover, an assortment of reports and or letters from family, friends and business associates as further evidence of his position in the community and in support of his requested sentence.  In addition, Abrams submits, under separate cover, a statement from his mental health provider, which notes the emotional and mental health impact his arrest and prosecution has had on him. All the aforementioned statements are submitted in support of a sentence not to exceed 57 months.

UNUSUAL FAMILY CIRCUMSTANCES

The Sentencing Commission has stated that:

> Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the

1    applicable guideline range.

2    U.S.S.G. Section 5H1.6.

3    There may be circumstances where family ties and responsibilities are not only

4    relevant to the sentencing decision, but may also constitute either a supporting factor for

5    an aberrance departure, or a separate and distinct basis on which to grant a downward

6    departure.   *United States v. Adler*, 52 F. 3d 20 (2d Cir. 1995)(family ties  treated as

7    separate basis for departure); *United States v. Pena*, 930 F. 3d 1486, 1495 (10th Cir.

8    1991) (family ties relevant to aberrance analysis, citing Dickey, supra).   Additionally,

9    other Circuits have allowed departures based solely on extraordinary family

10   responsibilities.  In *United States v. Haversat*, 22 F.3d 796, 797 (8th Cir. 1997)

11   (defendant was needed to provide care for his wife who suffered from severe psychiatric

12   problems).   Accord, *United States v. Gaskill*, 991 F.2d 82, 84-86 (3rd Cir. 1993).

13   Importantly, Courts have recognized that extraordinary circumstances include

14   situations where the defendant is the caretaker for a dependant who suffers for mental or

15   physical problems, See, *United States v. Gaskill*, 991 F.2d at 84-85, or where the

16   defendant has an unusual degree of family responsibility.  *United States v. Rivera*, 994

17   F.2d 942, 952-53 (1st Cir. 1993).

18   Perhaps the most instructive case arises from a Second Circuit decision: *United*

19   *States v. Galante*, 111 F.3d 1029 (2nd Cir. 1997) (departure for extraordinary family ties

20   and responsibilities from level 23, range 46-57 months, to a sentence of 24 months home

21   detention and 225 community service plus five years supervised release not an abuse of

22   court's discretion).   The *Galante* court acknowledged that:

23   the families of defendants are the intended beneficiaries of

24   downward departures on the ground of extraordinary family

25   circumstances relating to family responsibilities, the

26   sentencing court thought that if defendant were imprisoned the

27   family unit would probably be destroyed, and defendant's wife

28   and children relegated to public assistance, which, it

explained, was a matter worth considering, but not by itself a

−4−

ground for departure.  The district judge stated that 'removal
of the father from this unit at this particular point in time
would have a disastrous effect on the children in terms of
possibilities of their education and upbringing.'  That is, it
would terminate present family responsibilities which Galante
has effectively shouldered and continues to discharge.

*United States v. Galante*, 111 F.3d at 1035.

A downward departure on the grounds of extraordinary family circumstances should be granted for the following reasons:

This is a unique case that can destroy the Abrams family within the meaning of the Second Circuit's circumstances in *Galante*.

As stated in the PSR and noted in the assorted supportive reports and letters, Abrams is the sole means of support for his family. Further, he is the central figure in the emotional and financial support of his son, Henry, who has autism. Even more importantly, he has made every attempt to provide the love and affection so vital for the healthy development of his children. Substantial incarceration will inflict serious hardship on his family who rely heavily on him for financial support.

The disastrous effect on the Abrams family-related circumstances weigh strongly in favor of a sentence not in excess of 57 months.


A COMBINATION OF THE ABOVE FACTORS MERITS A DOWNWARD DEPARTURE

A downward departure, which otherwise results in a reduced sentence, may be based upon individual factors or a set or combination of factors.  *United States v. Lam*, 20 F.3d 999, 1005 (9th Cir. 1994) (family ties are a "particularly proper basis for departure where aberrant conduct is also an issue.); *United States v. Fairless*, 975 F.2d 664, 668 (9th Cir. 1991) (a single act of aberrant behavior may result from a convergence of factors); *United States v. Cook*, 938 F.2d 149, 153 (9th Cir. 1991).  The court in *Cook* stated in dictum  "The statute speaks in the singular of mitigating circumstances,"

–5–

1  (citations omitted) There is no reason to be so literal-minded as to hold that a

2  combination of factors cannot constitute a "mitigating circumstance". . .given the

3  commission's acknowledgment of the "vast range of human conduct" not encompassed

4  by the guidelines, a unique combination of factors may constitute the "circumstances that

5  mitigate". *Cook* at 153.  See also, *United States v. Pena*, 930 F.2d 1486, 1495-96 (10[th]

6  Cir. 1991) (a combination of family responsibilities, aberrant behavior and employment

7  history supported a downward departure in a marijuana distribution case.)  Indeed, in

8  *Koon*, the Supreme Court discussed the combination of several factors to uphold the

9  downward departure granted by the district court.  The court approved a departure

10  downward on the fact that the defendants in *Koon* had been successively prosecuted in

11  both the state and federal systems and would be more susceptible to prison abuse than

12  other inmates

13       Thus, a combination of factors may indeed represent the strongest grounds for a

14  downward departure, when the individual factors may fail to support it.

15       In this case, the combination of factors, [1] cooperation, [2] family circumstances,

16  [3] lack of substantial criminal contacts and history;  presents a case for a 10 level

17  downward departure and the imposition of a sentence not to exceed 57 months.

18

19       CONCLUSION

20        Mr. Abrams requests the court consider the aforementioned and impose a sentence

21  not greater than 57 months.

22  Dated: August 16, 2010

23  */s/Michael R. Belter*

24  _____

25  Michael R. Belter, Esq.
    Attorney for Mark Alan Abrams

26

27

28